UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SCOTT BERGANTINO,
    Plaintiff,

v.

CITY OF CRANSTON, by and through its Finance Director, Robert Strom, CRANSTON FIREFIGHTERS LOCAL 1363, and PAUL VALLETTA, JR., individually and in his professional capacities as President of Local 1363 and Deputy Chief of the Cranston Fire Department,
    Defendants.

C.A. No. 17-584-JJM-PAS

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Due to a conflict over participation in a philanthropic endeavor, Cranston firefighters Scott Bergantino and Paul Valletta, Jr. engaged in a verbal and physical fight in Station Six firehouse. This suit followed and Defendants the City of Cranston ("the City"), Paul Valletta, Jr., and Cranston Firefighters Local 1363 ("The Union") have filed motions for summary judgment. ECF Nos. 57, 61.

I.     FACTS AND BACKGROUND

The facts on which Scott Bergantino rests his Complaint against Defendants–denial of overtime and an assault by a supervisor–began in the late summer of 2017.

Mr. Bergantino is a lieutenant in the Cranston Fire Department. He was out on a scheduled vacation and placed his name on a no-call list for overtime shifts. At some point, he asked that his name be taken off the no-call list so that he could take an available overtime shift as a lieutenant at Station Six. The Agreement for Overtime Callback Provisions ("AOCP"), which governs overtime assignments, does not have a provision allowing firefighters to make such a removal request. Nevertheless, he demanded that the Chief's assistant bump another firefighter so he could work the shift. The assistant refused but offered him another overtime shift that would have paid him less. Mr. Bergantino declined that shift.

Mr. Bergantino understood that he had a right to pursue a grievance for an overtime violation (though it is undisputed that this scenario did not violate the AOCP) by either requesting the Union's assistance in filing the grievance or submitting it to the Chief directly. He did neither. Instead, he filed his own grievance, which was denied. According to the Collective Bargaining Agreement ("CBA"), he had to advance his grievance to Step Two by presenting it to the City's Personnel Director within five days of the Step One denial, but he did not.

The next incident involved an assault by Paul Valletta. Mr. Valletta is Deputy Chief of the Cranston Fire Department and president of the Cranston Firefighters Union, Local 1363. In his Complaint, Mr. Bergantino raised occasions where Mr. Valletta's behavior as a Union leader was violent, angry, and inappropriate. The City and Union knew that Mr. Valletta was prone to angry outbursts and

2

intimidation tactics.[1] For example, in the Winter of 2004, then Cranston Mayor Steven Laffey changed the rules to require Injured On Duty (IOD) applicants to release all medical records to the City in conjunction with any application for IOD benefits, not just records related to the injury for which the IOD application was made. The Union members disagreed with this policy change and voiced their concerns at a city council meeting. In fact, Mr. Valletta blew up at this meeting, yelling at the mayor, and had to be physically restrained from charging at him. No City officials or Union members did anything to discipline him. In fact, Mr. Valletta received a positive performance review that year and his record did not mention the outburst against Mayor Laffey.

Moving on to the facts of the assault itself, Mr. Bergantino and Mr. Valletta at first argued over whether Mr. Bergantino's Station Six crew should participate in the "Fill the Boot" fundraiser for the Muscular Dystrophy Association ("MDA") over the Labor Day weekend in 2017. Mr. Bergantino did not want his crew to take part in this Union activity; Mr. Valletta said he could not order the crew to do it, but he wished they would. The men shouted at each other, also arguing about overtime, filing grievances, and whether it was a conflict of interest for Mr. Valletta to be Deputy Chief of the fire department and Union president at the same time. The fight

---

[1] Mr. Bergantino also notes that Mr. Valletta projected himself in his role within the Department and the Union as a mafia boss. For example, he posted two photos with his face pasted into a Sopranos and Godfather poster in the Union hall. Mr. Bergantino believed he used anger to intimidate; his temper was on display many times—in 2013 and 2016—when he argued with other firefighters at Union meetings and intimidated them to either back down from their contrary position or stay silent.

3

ended with insulting curses and a physical altercation where the two men pushed and grabbed at each other and Mr. Valletta allegedly punched Mr. Bergantino twice in the back of the head. Several firefighters saw the incident.

Mr. Bergantino went to the Fatima Hospital Emergency Room and was treated for a concussion. That same day he went to the Rhode Island State Police to give a statement and then to Fire Chief William McKenna's house to deliver an IOD application, which he affixed to the windshield of the Chief's car. Michael Cabral, another firefighter, gave a statement to the Rhode Island State Police ("RISP") the day after the assault, affirming that Mr. Valletta hit Mr. Bergantino.

Mr. Valletta was arrested and charged with assault and disorderly conduct. The City suspended both men pending its investigation. The City investigated the altercation, interviewing many witnesses and compiling written statements. After the investigation was completed, both men were reinstated.[2] Mr. Valletta returned to work; Mr. Bergantino did not. Mr. Bergantino sought treatment for the physical and psychological impacts of the assault. A licensed social worker diagnosed him with Post-Traumatic Stress Disorder ("PTSD"). He is still out on unpaid leave and asserts that he is afraid to work for Mr. Valletta. A few months after the fight, Mr. Bergantino filed a grievance with Chief McKenna for the City's failure to discipline Mr. Valletta.

---

[2] Various members of the fire department and Mayor Alan Fung learned about the conflict between the two men. The City appears to have taken the position that the two men should not work together because of Mr. Valletta's arrest and the potential for abuse of power within the fire department.

Mr. Valletta's state court case on the criminal assault and disorderly conduct charges proceeded to trial. Mr. Cabral testified consistent with his initial statement to the RISP that Mr. Valletta punched Mr. Bergantino.[3] At trial, Mr. Valletta was acquitted on the assault charge, but convicted of disorderly conduct. He appealed the conviction, later disposed of with a not-guilty filing.

Meanwhile, Mr. Bergantino pursued the IOD benefits application process that he started the day of the altercation. The City dragged its feet on the IOD application. There are emails between Donna Searles who processes the applications and Chief McKenna where she asks for his input and he ignores her—although the facts show that from the beginning Ms. Searles recommended that Mr. Bergantino's application be denied. Mr. Bergantino filed a second application for the assault-related stress, which the Chief also ignored and did not follow up with Mr. Bergantino. He filed a grievance about this lack of attention to his applications. His claims are proceeding through the grievance and arbitration process.

Mr. Bergantino also brought a seven count civil complaint against Defendants the City, his Union, and Mr. Valletta.[4] After voluntary dismissals of some counts

---

[3] Mr. Bergantino alleges that the City intimidated Mr. Cabral——specifically that the City's Personnel Director and lead investigator Mr. Daniel Parrillo allegedly encouraged Mr. Cabral to correct his statement with the RISP because it looked like Mr. Cabral may not have told the RISP everything or he may have misconstrued what happened. Mr. Cabral has said that he received the cold shoulder and less overtime at work after his participation in the investigation and trial.

[4] The claims brought are: Count I § 1983 Negligent Training against the City; Count II Assault against Mr. Valletta and the Union; Count III Breach of the Duty of Fair Representation against Mr. Valletta and the Union; Count IV Negligence against Mr. Valletta and the Union; Count V Civil Conspiracy against all Defendants; Count VI Tortious Interference with Prospective Economic Advantage against all

against some or all Defendants, what remains is Count I, a § 1983 negligent training claim against the City, Count II, an assault claim against Mr. Valletta and the Union, and Count III, a breach of the duty of fair representation claim against the Union. Before the Court are two motions for summary judgment—one from the Union on Counts II and III (ECF No. 61) and the other from the City of Cranston on Count I (ECF No. 57).

II. STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Procedure 56(a) dictates that summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute is "genuine" when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citing *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). If there is a genuine dispute of a material fact, that dispute

---

Defendants; and Count VII Labor-Management Reporting and Disclosure Act against Mr. Valletta and the Union.

would "need[ ] to be resolved by a trier of fact." *Doe v. Trustees of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)).

III. DISCUSSION

A. Count I—Negligent Training under 42 U.S.C. § 1983 against the City

Mr. Bergantino brings a § 1983 claim against the City, alleging that the City knew that Mr. Valletta had a violent temper, and that knowledge created a duty to have a policy or custom in place to train employees in supervisory roles how to handle stress and anger. The City did not live up to that duty Mr. Bergantino avers and that failure caused Mr. Bergantino serious physical and emotional distress. The City argues that there is no evidence of a standard of care or duty for a municipality to provide anger management training and no dispute that Mr. Valletta's behavior did not result from any City policy.

1. Law

Municipal liability under 42 U.S.C. § 1983 is well established. Section 1983 provides a cause of action to any person whose constitutional rights are violated by a state actor. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). But a municipality cannot be held liable for damages for the acts of individual municipal employees on a theory of respondeat superior. *Id.* at 691. Liability is found only "where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95).

A plaintiff seeking damages against a municipality must show that "the action that is alleged to be unconstitutional implements or executes a policy statement,

7

ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers" or is "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91. Therefore, "a municipality may be liable under § 1983 where a custom or practice is so 'well-settled and widespread that the policymaking officials of the municipality can be said to have either' actual or constructive knowledge of it yet did nothing to end the practice.'" *Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 23-24 (1st Cir. 2006) (quoting *Silva v. Worden*, 130 F.3d 26, 31 (1st Cir. 1997)). The policy or custom must be the "cause and moving force behind the deprivation of constitutional rights." *Bisbal-Ramos*, 467 F.3d at 24.

Mr. Bergantino has brought a failure to train claim in this case.

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.

*Connick v. Thompson*, 563 U.S. 51, 61 (2011). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (quoting *Canton*, 489 U.S. at 388-89. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *County Commr's of Bryan Cty. v. Brown*, 520 U.S. 397, 410

8

(1997)). A plaintiff can prove deliberate indifference through a pattern of similar constitutional violations by untrained employees, but a pattern might not be necessary "in a narrow range of circumstances," *Bryan Cty.*, 520 U.S. at 409, such as those where "the unconstitutional consequences of failing to train could be so patently obvious." *Connick*, 563 U.S. at 64 (citing *Canton* where the Court considered the failure to train armed police officers in the constitutional limitation on the use of deadly force to be so predictable that it would reflect the city's deliberate indifference to a citizen's constitutional rights).

2. Analysis

Mr. Bergantino sued the City under § 1983 alleging that Mr. Valletta intentionally assaulted him because he refused to take part in the MDA Fill the Boot fundraiser. His negligent training claim encompasses his allegation that the City knew and did not discipline Mr. Valletta for his violent temper and anger management issues. He argues that a jury could find that this practice of disregarding bad behavior shows that the City was deliberately indifferent to the danger posed by Mr. Valletta because his reputation for using rage and the threat of force to project his power for years created a duty to have a policy in place to train him and other supervisors how to control their anger.

After reviewing the summary judgment record in this case, the Court finds no evidence that any assault resulted from a municipal custom or policy, or the absence of one, and no evidence that any training would have prevented the assault. While inaction can be considered an unofficial custom or policy, it must arise to the level of

9

widespread, longstanding ignorance of constitutional violations. *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 14 (1st Cir. 2005); *Roberts v. Town of Bridgewater*, No. CV 15-10266-DJC, 2015 WL 4550783, at *4 (D. Mass. July 28, 2015). That is not the case here. The evidence taken in the light most favorable to Mr. Bergantino shows that the City knew that Mr. Valletta lost his temper five times over the course of his decade-long career—and one of those occasions he was not on the job. This is not a pattern of violations that would lead the City to know it needed to provide anger management training nor is it a "highly predictable consequence" of a failure to train. *See Bryan Cty.*, 520 U.S. at 409.

The undisputed evidence shows that, while Mr. Valletta and Mr. Bergantino had a rocky relationship, any assault was a result of Mr. Valletta's own behavior, not endorsed by or based on a City policy or lack of training. Because a municipality cannot be held liable under a respondeat superior theory, *Monell*, 436 U.S. at 691, and Mr. Bergantino has failed to present to the Court any disputed material issues of fact on whether a City policy or custom caused his injuries, the Court GRANTS the City's Motion for Summary Judgment on Count I.

B. Count II—Assault against Mr. Valetta and the Union

Mr. Bergantino sued both Mr. Valletta and the Union for assault. Mr. Valletta did not move for summary judgment on the Count II assault claim against him.

Because the Court dismissed Count I, jurisdiction over this state law claim is unsettled so the Court will address this first.[5]

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367. The Court finds that it is appropriate to exercise supplemental jurisdiction in this case. Mr. Bergantino's state law claim "form[s] part of the same case or controversy" as the federal claims. Furthermore, this case is not in the early stages of litigation, as the parties have undertaken all discovery and filed the instant dispositive motions. Moreover, upon reviewing the applicable caselaw both parties have ably presented and the particular facts of this case at the well-developed summary judgment stage, the Court does not find that this case presents such a novel or close question of state law such that this Court cannot retain jurisdiction over the remaining assault claim against Mr. Valletta. Count II will be resolved at trial in this Court.

Moving on to his claim against the Union, Mr. Bergantino argues that the Union is liable for any assault under agency principles because Mr. Valletta was a Union official. The Union moves for summary judgment, arguing that Mr. Valletta

---

[5] Mr. Bergantino asked the Court to exercise supplemental jurisdiction. After initially asking that the Court dismiss this state law claim for lack of subject matter jurisdiction if it dismissed Count I, the City now agrees that this Court should retain jurisdiction.

11

was not acting within the scope of his role as a Union official and the Union did not authorize or condone Mr. Valletta's acts, so it is not liable for them.

1. Law

"The common-law definition of agency requires as an essential element that the agent consent to act on the principal's behalf, as well as subject to the principal's control." Restatement (Third) Of Agency § 1.01 (2006). A principal can only be liable for the intentional acts of their agent if the agent committed the assault while acting within the scope of his employment and the principal authorized the intentional acts. *Drake v. Star Market Co.*, 526 A.2d 517, 519 (1987). In order to authorize or ratify an agent's behavior and be thus bound by that behavior, a "principal must have full knowledge of all material facts." *Beckwith v. Rhode Island School of Design*, 404 A.2d 480, 485 (1979).

2. Analysis

The evidence in this case does not support Mr. Bergantino's theory that the union is liable for Mr. Valletta's acts. First, it is undisputed that Mr. Valletta was not acting in the scope of his duties as a Union official when he and Mr. Bergantino had their altercation. Mr. Valletta was on duty as a Deputy Chief firefighter. Second, there is no evidence that the Union Executive Committee authorized Mr. Valletta to engage in the fight; in fact, the evidence shows that the Union's bylaws specifically prohibit any physical assault upon a member. Mr. Bergantino argues that a jury could find that the Union ratified Mr. Valletta's conduct because it did nothing to discipline him even though it has known since at least 2004 that he had a propensity

for violence, but that assertion fails in the face of the fact that the Union's investigation is still open pending resolution of this lawsuit so it could still refer charges against either individual.[6]

In short, Mr. Valletta was on duty as Deputy Chief of the Cranston Fire Department and not acting within the scope of his Union position or with the Union's authority when he assaulted Mr. Bergantino, so the Court finds that the Union is not liable as a matter of law for Deputy Chief Valletta's intentional acts. Count II is DISMISSED against the Union.

C.  Count III – Breach of the Duty of Fair Representation against the Union

Mr. Bergantino's claim for breach of the duty of fair representation against the Union is based on the Union's failure to file a grievance for him after he was denied overtime in August 2017. He alleges that the Union breached its duty because Mr. Valletta responded that Mr. Bergantino should file the grievance with him and laughed, showing his contempt of the Union's duty of fair representation. In his opposition to the Union's motion, Mr. Bergantino argues that this claim is also based on events surrounding the alleged assault and the Union's failure to file a grievance over the City's refusal to approve his IOD claim. This instance is not specifically laid out in his Amended Complaint, but he does reference his belief that "further grievances" would be futile because of Mr. Valletta's attitude.

---

[6] It is also undisputed that Mr. Bergantino had a right under the bylaws to refer misconduct charges against Mr. Valletta. Neither he nor any other Union member has done so.

1. Law

The duty of fair representation is a doctrine from § 9 of the National Labor Relations Act. A "'Union ha[s] a statutory duty fairly to represent all of those employees, both in its collective bargaining with [the employer], ... and in its enforcement of the resulting collective bargaining agreement." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (citation omitted). "A union can be condemned for inaction only when it has actual or constructive notice that a situation exists which requires it to act." *Truck Drivers Union Local No. 407*, 249 NLRB 59, 64 (1980).

2. Analysis

First, Mr. Bergantino admits that the Union did not violate the CBA over the overtime assignment so a grievance on this issue would not succeed regardless of Mr. Valletta's contemptuous attitude. Second, Mr. Bergantino failed to follow the CBA procedure. For example, he did file a grievance on September 25, 2017, but did not follow the CBA protocol and notify the Union or submit the grievance with the Fire Chief. He also did not file a Step Two grievance on the denial of IOD with the City or through the Union after his Step One grievance was denied. He cannot now argue that the Union failed in its duty to fairly represent him when it did not know about the grievance because Mr. Bergantino failed to exhaust his remedies under the CBA.

Finally, Mr. Bergantino argues that he should not be faulted for not filing grievances because it would have been futile in the face of the Union's attitude toward its duty of fair representation. But there is no evidence that the Union prevented or

discouraged him from pursuing grievances. *See Prudential Ins. Co.*, 317 NLRB 357 (1995) (in considering futility, the NLRB looks at whether the factual scenario demonstrated a "reasonably foreseeable effect to discourage [an employee] from invoking the grievance procedure."). He filed five grievances rooted in these two incidents in the face of Mr. Valletta's attitude and demeanor: for the August 2017 overtime denial, the September 2017 assault, his ten-day suspension as punishment for his role in the assault, and his IOD claim. Moreover, Mr. Valletta's attitude does not bear on the duty of fair representation because that "duty derives from the union's statutory power as an exclusive bargaining agent," and the conduct of "[a]n individual union officer in his individual capacity has no such power, and therefore, no such correlative duty." *King v. Bos. Broadcasters, Inc*, C.A. No. 77-1023-MC, 1981 WL 2368, at *3 (D. Mass. Jan. 29, 1981) (citations omitted). While facing the prospect of filing a grievance with a difficult authority figure is far from ideal, it does not impute liability on the Union itself in this case.

Because the undisputed facts lead the Court to conclude as a matter of law that the Union did not breach its duty of fair representation under these undisputed facts, the Court DISMISSES Count III against the Union.

IV. CONCLUSION

For all these reasons, the Court GRANTS both the Union's and City's Motions for Summary Judgment. ECF Nos. 57, 61. The Court DISMISSES Count I against the City and Counts II and III against the Union. All that remains of Mr. Bergantino's case is his state law assault claim against Mr. Valletta. The Court

15

will schedule a pretrial scheduling conference after entry of this Order to set the case for trial.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
Chief United States District Judge
March 16, 2020